Good morning, Your Honor. Charles Bonneau, Jr. appearing on behalf of Appellant Richard Nuwintore. Your Honors, this appeal raises a question of ineffective assistance of counsel in negotiating a guilty plea under the standard of India v. Kentucky, that is, whether the immigration consequences were adequately conveyed to the defendant. I just want to make sure I understand, Mr. Nuwintore is now subject to an order of removal? He is subject to deportation. He's been... We don't use deportation anymore. That's an old term. I believe he's subject to removal and it's temporarily suspended. It is withholding, right? Is it withholding? He has withholding. Now, will the results in this case have any bearing on his asylum? Yes. If the judgment is set aside and then renegotiated with a loss amount under $10,000, the immigration court will rehear the matter and remove the removal order. Well, yes, a little quick, isn't it? Because he had asylum when we started this, and with the asylum when he started it, then we had to change a plea, and we got $13,301, and if it had been under $10,000, there may have been no worry whatsoever. But then, even after getting that, the immigration department withheld his removal. There's nothing in the withholding of removal which suggests that this particular case is going to make a difference on whether his removal is withheld? The removal order itself depends on this fine and the fact that he admitted that amount in the U.S. District Court in 2010. So if you're saying the removal order itself suggests this is going to determine whether he's removed? Yes. Where is that in the record? That is, of course, it's not in the record. Well, that seems to me that I never read anything like that. Well, the decision in Dijuan holds that the offense cannot be the removal unless it's just on the generic basis of the offense and has to be something that the defendant admitted. The immigration court here said directly, you admitted an amount over $10,000. That's why you are removable, and that's why you're subject to a hearing. Okay, I hear you. I just want to make sure I didn't miss something. Second, why is this a more usual, why is this a remedy which he has at all? It seems to me that the writ of error, quorum nobis, is supposed to be a remedy he has when he has no other remedy. He does not have habeas corpus because he, by the time he got through with the immigration authorities and So he doesn't have habeas corpus because he didn't use it. He didn't know he had a habeas claim. That's the whole point of quorum nobis, something that you find out later, and this is a classic situation where we're going to see quorum nobis because it's when you get to immigration court that you find out the hidden knife that was in the deal. Well, I guess if there was a hidden, then it is an unusual situation, but I guess we're back to then, was it really hidden? Well, we think that's why it merits review at this level, and yes, it was hidden. It wasn't communicated to him. He filed a declaration in which he said that it wasn't communicated to him. We don't have any declaration from defense counsel. I tried. I'm sure the government may have tried, but at any rate, there's no answer from him, and indeed, the conclusion is inescapable that he was not told of this removal consequence. Well, counsel, it may not have been as clear as he would have liked at this point, but he was told that because he had a loss over $10,000, that's right in the plea agreement, that removal is presumptively mandatory. Okay, ask the government if they think that's accurate advisement because their brief says that he was accurately advised off the record that he would not be removed. That's their position, so I propose that that question be asked. What do we do with the plea colloquy? And I'm looking at pages 49 and 50 of the record, which is pages 13 and 14 of the plea colloquy, where the district court is going through the recitations that support the claim. It comes up with the $13,000, and then on the next page says, Mr. Nuentor, did you hear what the U.S. Attorney just said? Yes, Your Honor. Is everything he said true, correct, and accurate? Yes, Your Honor. Yes. So he's admitted in open court to the $13,000. So why doesn't that just resolve it? Because that's the condition of getting the plea bargain. That's right. But he's just admitted that he was responsible for $13,000. People in plea bargains are told you're either going to go to prison for 10 or 20 years, or you say these things that the U.S. Attorney is going to say. That's what you agree to. That's what a plea bargain is. But he's told the court that that was correct. Yes. Was he lying? Was he lying? Well, let me ask this. I'll state this. I'll state this. I'll state this. I'll state that in California, people plead guilty to reckless driving every day of the week as a lesser offense to drunk driving. That doesn't mean that they were reckless driving. Nobody said the California Supreme Court says they don't have to be reckless driving. They may have been straight down the middle of the road to exactly where they were supposed to be. And so they're not pleading guilty to what the agreement is. That's the nature of a plea bargain. I would have thought your answer to Judge Breyer would be that he would not have been in a position to be asked that question or whatever if he had been properly advised by counsel. That's correct. Counsel had told him, look, you're going to have a mandatory deportation or removal. Yes. Then, you know, if you take this deal, there's no doubt about it, you will be removed because you're going to have to admit to $13,000. That's not what he was told. And, I mean, I don't think he has to deny in response to his question that that may in fact have been true. I think your position is that he was not, he should not have been in a position to be asked one way or the other. He had a fithering right to remain silent. I'll adopt everything you just said. I don't think he gave it up. I don't misunderstand him. I think you will. But it doesn't get you all the way home. It just gets you to a different place. I understand that. And that is, he claims to have been told certain things by his lawyer, you know, he'll never be deported and so on. We don't have any statement by the lawyer unlike, I don't know, in this particular case, Judge Walter, in his opinion, where we had the Rodriguez-Vegan. I'm sorry, Rodriguez-Vegan. Yes, thank you. I'm sorry, I get these times of day that name cases confused, but that's the case I have in mind. So in that case, we had the statement of the defendant, and we also had the larger car with the statement of his lawyer. We don't have anything like that here. Do we simply believe you're lying when you say something like that? I mean, it's easy enough to make up afterwards, you know, I was told a tale by my lawyer. Well, the district court could have had an evidentiary hearing. I believe we asked for one, but I don't have any power to force him to give us a statement. But what overshadows all of this is that Mr. Neuentor's declaration is entirely plausible and almost inescapable. Why would you concede guilty to something that carried a death sentence? It seems implausible in that if you read the change of plea hearing and what he was told there, if you read the plea agreement and what he was told and what he agreed to there, if you read what he pleaded guilty to one count and what happened there, and if you read the sentencing hearing, it seems totally contradictory. Let me urge the court to read the defense sentencing memorandum, the defense attorney. Well, I read the sentencing hearing where counsel got up and said, Your Honor, the defendant is 43 years old. He's facing deportation. He's not a citizen. I think he's 23. Well, I don't, I might have got that wrong. Last year when we had the discussions before we accepted the plea agreement, I did state very clearly on the record that I believed he would be deported, and I believe that is the case as we sit here today. Well, that's what he said. Well, let me back up a step. As soon as this was entered, this plea was entered, and the pre-sentence report was prepared, the first thing defense counsel did was file a memorandum that said the loss amount, guess what, is less than $10,000. That is inconsistent with advising somebody to admit an amount over $10,000. The judge didn't accept that. And as far as that. The judge didn't accept it. Well, but doesn't it tell you we've been asking what's defense counsel's position? We haven't heard from him. There he is. He's stating it is under $10,000. No, that isn't what I said. I said it seems a little uneasy for me to believe what your client now wants to say and stamp himself out when I read what happened at the change plea hearing, when I read what happened in the plea agreement, when I read what happened when he pled guilty to one count. That's what I said. I'm not talking about what counsel will say or won't say. I'm saying what did he say to the court? Now he can come in and say whatever he wants to say to try to get out of it. Well, I was asked the question, what is defense counsel saying? That's what defense counsel says. Now it's under $10,000. That wasn't my question. Number two, it's, again, the same answer I gave before. It's the government's position that he was correctly advised that he would not be removed. That's in their brief. That's the position they take. Well, that, in fact, at this point, he hasn't been removed. That's all we can say. Well, I looked for the withholding, and I couldn't find even the order. The withholding, it's not in the record. And, well, there's a large discussion of it in the immigration court finding about all the reasons why he's not temporarily subject to removal. And that's temporary. Guess what?  Is this going to change? If this is a sort of damage that he's over his head, no one would admit to something like that if they knew that they were exposing themselves to the death penalty, if they were returned to Barone. Rodriguez Vega, he's been able to say that a withholding is not good enough. That's what note six. That a withholding is? Is not the equivalent of asylum. He's been, I think his asylum status has been removed. I think that's not certain. Not certain at all. But, anyway, if you're out of time, why don't we hear from the government? Thank you. Good morning. Brian Fogarty on behalf of the United States. Mr. DeWitt Torr's trial counsel told him that he would be subject to deportation and that he would ultimately avoid physical removal from the United States. That advice was accurate. And because Mr. DeWitt Torr got exactly what he was told to expect as a result of his guilty claims. Mr. DeWitt Torr's trial counsel, as alleged in Mr. DeWitt Torr's affidavit, is that Mr. DeWitt Torr's trial counsel told him that he would ultimately be saved from deportation, which would be physical removal from the United States. You're saying physical removal. I mean, you know, this is the gloss you're putting on it. It sounds to me like what Mr. DeWitt Torr is saying is my lawyer said, I won't be deported. Fair enough. Do you agree with that? I'd agree that there are two elements. There's one, the removability, which is the advisement that Mr. DeWitt Torr's lawyer gave him on the record and the court gave him on the record about whether he'd be subject to deportation, which would be physical removal. And then there's the second element, which is what Mr. DeWitt Torr's attorney. The question is, as I read Rodriguez-Vega, if it is virtually certain that you'll lose your asylum status, your lawyer has got to tell you it is virtually certain that you're going to lose your asylum status. And then Rodriguez-Vega says the fact that you might get other kinds of relief, like can't or withholding, is not good enough. You have to tell the client unequivocally that this status that you have as an asylum beneficiary, you will lose. Do you agree with Rodriguez-Vega's saying that that is what the lawyer must say, and that withholding or removal and cancelling are not good enough? I agree that Rodriguez-Vega says that yes, you must advise if it is certain, if the results are certain, you must advise or provide accurate advice consistent with that certainty. Here, Mr. DeWitt Torr's attorney gave you that advice. I'm sorry, but the second part of what I said, and that having withholding or removal or cancelling is not equivalent. You've got to make it clear that you're going to lose your asylum status, and the fact that you might get some other kind of relief is just not good enough. That's what I read Rodriguez-Vega to say. That's correct, Your Honor, and here, Mr. DeWitt Torr's attorney did just that. Where do we have evidence that he did just that? He said on the record, at the change of plea, that Mr. Nguyen Torr would lose his asylum status. Okay, let's look at that. What page? Where are you reading from? Your Honor, that would be an excerpt from record 44 and 45. Okay. Let's look at the language. What line? I think maybe page 43. I think it's page 43. Thank you, Your Honor. What line? That would be lines 10 through 13. His citizenship or any attempt at citizenship would be revoked. Now, this is a defense lawyer. He's been advised of his rights. I'm sorry. It's actually written into the plea agreement. He's been advised of his rights based on the plea, and I believe that he will mandatory be a citizenship or any attempt at citizenship would be revoked, and he would be deported. So you read this as saying that's what he advised the lawyer, the client advised the lawyer. It seems to say that this is what the plea agreement says. Well, this is Mr. Nguyen Torr's attorney in open court advising the court on what the consequences of Mr. Nguyen Torr's guilty plea would be. Well, no, I'm sorry, but where does he say that he advised the client that, in fact, he would certainly be removed, almost certainly be removed? The advisement is on the record. It's Mr. Nguyen Torr's attorney's statement in open court that these are the consequences of his client's guilty plea, and his client is with him in court. And also, Your Honor, if you turn to excerpt record 92, Mr. Nguyen Torr's own declaration indicates that his trial counsel showed me, and I'm quoting from the declaration, showed me the portion of the written plea agreement that indicated that there could be an immigration counsel. Did you say 92? Yes, 92. I have the declaration. It goes to 91. I'm sorry, is it? Okay, I'm sorry. Yes. 92, the last paragraph of 92 and the first paragraph of 93, which states that the written plea agreement contains a clause, which states that because the defendant is pleading guilty to access device fraud with a loss amount over $10,000, removal is presumptively mandatory. That's in Mr. Nguyen Torr's declaration. But he also says he showed me the portion of the written plea agreement that indicated that there could be immigration consequences, but he said that I was protected by my political asylum status. And the protection or the facts underlying his political asylum petition, those facts are what enabled Mr. Nguyen Torr to stay in the country as he is today under withholding of removal, which, just to respond to his counsel's argument previously, there's nothing to suggest that that will change, that withholding of removal is indefinite unless there is a change in circumstances. And you're suggesting, then, that regardless of what we do here, there's no change of circumstances? There's no indication from the government's perspective that this case's outcome, if the court were to affirm this, the district court's dismissal of the petition, that that would have an effect on Mr. Nguyen Torr's petition, or Mr. Nguyen Torr's status in the United States. But you don't know, correct? You can't guarantee that? No, I cannot. Counsel, if we were to grant the rent in this case, what follows from that? In habeas, we know that we, you know, oftentimes give the government, you know, 60, 90 days to retrial. What do you do in a case like this with coram nobis? Just as a practical matter, if the conviction was vacated, then the case would be reinstated. The case would be reinstated, can it be retried? Potentially, yes. And it doesn't violate double jeopardy? I don't believe it would. He could be subject to a different term of months in prison? Let's suppose you went back and then you came back and you said, okay, it's $73,000 in loss, or it's $240,000, or various figures are being thrown around here. Let's suppose that you prove that and convince the jury of that. Could the judge come back and say, whoa, the previous sentence was way too light, you've got another two years to serve, and then you can deal with the immigration folks? I'm not sure that he could be retried and having already served the sentence that was imposed. So if we issued the writ, does his conviction just go away? I would say that there has been no error, so the writ should have been issued. I understand the government's position, but if we were to issue the writ, I'm trying to figure out what the consequences are here, I'm trying to figure out what happens. We don't see a lot of these writs, I'm just curious as to what the consequences are. I assume that this just sets aside the guilty plea, and he can't be charged again at all. And wouldn't it be quite a welcome time for the government from charging him with the same crime and going to trial over the same? If the conviction was vacated, then he hasn't been. He has served the custodial sentence as a result of the first sentence. So you would just take that into consideration? You don't just have to sue him if he was found guilty? I think that's right, Your Honor. Has he paid restitution? I'm not sure if the restitution amount has been paid. The restitution is $13,000, because that was the amount that he was found guilty to. So presumably if he was retried, even if he didn't get additional time in prison, he might be ordered to pay a restitution of $70,000, $250,000, whatever loss was found by the jury. That's correct, Your Honor, and there is evidence from the sentencing hearing and elsewhere in the record that suggests that the loss amount was potentially much larger than the $13,000 to which he stipulated. And that's another reason why this plea offer was favorable to Mr. Noentor and explains, at least in part, why he would accept it. But this is corporate. I mean, if you don't believe that the chance he takes that he might be retried and... But this plea offer provided him, capped his exposure in terms of the loss amount, and it also provided him the best mechanism for staying within the United States, which he ultimately has. I see that I'm... Okay, thank you. Thank you, Your Honor. We are out of time. We'll take a minute for a button. There'd be no double jeopardy consequence in this case. There's no trial, so there's no double jeopardy protection. He could be charged. Right on everything. And if the jury came back and said, do we find $250,000 in loss, that would mean he could actually get additional time and he has paid restitution. That's reflected in the immigration court decision. Basically, the restitution has made it all good. You know, that was one of the reasons. That's in the IJ's decision. Yes, that was one of the reasons cited for giving him on suspension of removal. The government, in this case, wants to have the cake and eat it too. They want to point to all of these things and say that he was absolutely going to be deported and that he knew that, at the same time being told off the record that he wasn't going to be deported. The standard of whether this case would have been tried is an objective one. That is, you have to assess the interests of both sides objectively. Would the government honestly take this case to trial just to argue over a loss amount, which they could establish with the trial judge by a preponderance of the evidence, without even having a jury trial? It's all relevant conduct. Well, they can't establish the loss for him unless he pleads guilty again, can they? Yes, they absolutely can. Once he pleads guilty to one count, then count two. But his guilty plea is going to be gone if you win. Well, the question is not whether he's going to plead guilty. I believe that he would plead guilty if we went back. It's just that he wouldn't admit the loss amount over $10,000. That's the whole question. Otherwise, we'd have a jury trial over just the loss amount that district court, I don't think, would tolerate. District court could find the same thing itself and impose the same sentence or a greater sentence. He risks all that, but it's worth it to avoid being removed from this country. Thank you. Okay, in case someone else has something to add.
judges: Kozinski, Bybee, N.R. Smith